Eric Poulin (CA Bar No. 298476)
Paul J. Doolittle (pro hac forthcoming)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
      cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEANNA SMITH, individually and on behalf of all others similarly situated,**<br><br>        **Plaintiff,**<br><br>    vs.<br><br>**BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY D/B/A BLUE SHIELD OF CALIFORNIA,**<br><br>        **Defendant.** | Case No.: 3:25-cv-3712<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>  1. Negligence/Wantonness<br>  2. Violation of California Invasion of Privacy Act<br>  3. Breach of Implied Contract<br>  4. Unjust Enrichment<br>  5. Invasion of Privacy<br>  6. Violation of Federal Wiretap Act<br>  7. Violation of Computer Fraud Abuse Act |

Plaintiff, Deanna Smith, ("Plaintiff") brings this Class Action Complaint against Defendant Blue Shield of California Life & Health Insurance Company, doing business as, Blue Shield of California ("Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**PARTIES, JURISDICTION & VENUE**

1.      Plaintiff, Deanna Smith is a resident and citizen of California.

2.      Defendant, Blue Shield of California Life & Health Insurance Company, doing business as, Blue Shield of California, is a mutual benefit corporation and health plan with a principal place of business located at 601 12TH Street, 20TH Floor, Oakland, California, 94607.

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, which grants federal district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treatises of the United States.  Plaintiff alleges violations of the Federal Wiretap Act (18 U.S.C. §2511) and the Computer Fraud and Abuse Act (18 U.S.C. §1030), which create the Plaintiff's right to sue.

4.      This Court has personal jurisdiction over Defendant because its principal place of business is in the State of California. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of California.

5.      Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

**FACTUAL ALLEGATIONS**

6.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the protected health information ("PHI") and other personally identifiable information ("PII") of 4.7 million people, including, but not limited to: insurance plan name, type and group number; city; zip code; gender; family size; Blue Shield assigned identifiers for online

accounts; medical claim service date and service provider, patient name, and patient financial responsibility; and "Find a Doctor" search criteria and results (location, plan name and type, provider name and type).

7.     Upon information and belief, Defendant historically used Google Analytics to track the website usage of plan members who engaged certain Blue Shield websites. Defendant negligently configured its Google accounts, which lead to the unauthorized disclosure of individually identifiable health information.

8.     On February 11, 2025, Defendant discovered that, between April 2021 and January 2024, Google Analytics allowed sensitive plan member data to be shared with Google's advertising product, Google Ads (hereafter, the "Data Breach").

9.     Upon information and belief, Google Ads used the sensitive plan member data acquired in the Data Breach, such as gender, family size, geolocation, zip code, other information to serve targeted advertisements to the Plaintiff and the Class (later defined) through the Google Ads platform.

10.     Defendant emailed Plaintiff a "Notice of Data Breach" on April 4, 2025. Notice attached as **Exhibit A**.

11.     Omitted from the notice letter were the details of how the Data Breach occurred, whether Defendant requested <u>and</u> confirmed Google deleted the data, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII/PHI remains protected.

12.     Defendant failed to provide Plaintiff and Class Members with notice of the data collection, the purposes for the collection, and failed to obtain affirmative consent for the collection and dissemination of their PHI/PII for advertising purposes.

13.     Defendant invaded Plaintiff and Class Members' privacy by utilizing tracking technology that surreptitiously collected, shared, stored, and processed their PHI/PII without obtaining prior affirmative consent.

1

2

***Defendant Knew, or Should Have Known, of the Proper Usage of Google Analytics***

3

4

14.     Upon information and belief, the mechanisms employed and the potential for improper disclosure of Plaintiff's data was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the information from those risks left the data in a dangerous condition.

5

6

7

8

15.     Defendant used Google Analytics to track how its customers interacted with its websites. When a user visits a website running Google Analytics, tracking code is executed in the user's browser.

9

10

11

16.     There are roughly four (4) components to this process: 1) data collection; 2) data processing; 3) data reporting; and 4) data integration.[1]

12

13

17.     First, is data collection where JavaScript code is placed on every page of the website, which collects data about user interactions, such as page views, clicks, and other events. Google Analytics uses cookies to store information about users as they navigate the site. These cookies help identify returning users, track their sessions, and collect data over time.

14

15

16

17

18.     Second, is data processing. Once the data is collected, it is sent to Google's servers for processing. The data can be categorized by certain dimensions such as user location and device type. Next the system groups user interactions into sessions.

18

19

20

19.     Third, is data reporting, where the data is marshalled into various reporting formats through the Google Analytics interface. These features may include:

21

22

a.  Audience Reports—information about the demographics (age, location gender, etc.), interests, and behavior of users visiting the website.

23

24

b.  Real-Time Reports—provides immediate insights into user activity as it happens on the website.

25

26

c.  Behavior Reports—analysis of how users interact with the website, including page views and user flow through the site.

27

28

---

[1] *See generally*, https://support.google.com/analytics/answer/12159447?hl=en

CLASS ACTION COMPLAINT

d.   Conversion Reports—tracks specific goals, such as form submissions, purchases, or downloads, which helps measure the effectiveness of marketing campaigns.

e.   Acquisition Reports—show how users arrived at the website (e.g., through organic search, paid ads, social media).

20.    Fourth, is data integration.  Google Analytics can be integrated with other Google services, such as Google Ads and Google Search, enabling a more comprehensive view of marketing efforts and website performance.

21.    In sum, all the information collected by the Google Analytics JavaScript code is sent to Google for processing. Once Google Analytics processes the user data, it aggregates and organizes the data based on particular criteria.

22.    Google advises "HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies. Google makes no representations that Google Analytics satisfies HIPAA requirements and does not offer Business Associate Agreements in connection with this service."[2]

23.    Defendant is covered by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (*see* 45 C.F.R. §160.102) and as such is required to comply with the HIPAA Privacy Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

24.    The HIPAA Privacy Rule and Security Rule establishes standards for the protection of protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can

---

[2] https://support.google.com/analytics/answer/13297105?hl=en#:~:text=HIPAA%2Dregulated%20entities%20using%20Google,in%20Google's%20contracts%20and%20policies.

CLASS ACTION COMPLAINT

be used to identify the individual," that is held or transmitted by a covered entity. *See* 45 C.F.R. § 160.103.

25.     The Office for Civil Rights (OCR) at the U.S. Department of Health and Human Services (HHS) has issued a bulletin to highlight the obligations of HIPAA covered entities and business associates under the HIPAA Privacy, Security, and Breach Notification Rules when using online tracking technologies.

26.     The bulletin specifically provides, "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures."[3]

27.     The bulletin further explains, "tracking technologies developed by third parties (*e.g.*, tracking technology vendors) send information directly to the third parties who developed such technologies and may continue to track users and gather information about them even after they navigate away from the original website to other websites."[4]

28.     The Privacy Rule does not permit disclosures of PHI to a tracking technology vendor like Google Analytics based solely on a regulated entity informing individuals in its privacy policy, notice, or terms and conditions of use that it plans to make such disclosures. Regulated entities like Defendant must ensure that all tracking technology vendors have signed a business associates agreement (BAA) and that there is an applicable permission prior to a disclosure of PHI.

29.     Website banners that ask users to accept or reject a website's use of tracking technologies, such as cookies, do not constitute a valid HIPAA authorization.

---

[3] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html
[4] *Id.*

30.     Further, it is insufficient for a tracking technology vendor to agree to remove PHI from the information it receives or de-identify the PHI before the vendor saves the information. Any disclosure of PHI to the vendor without individuals' authorizations requires the vendor to have a signed BAA in place and requires that there is an applicable Privacy Rule permission for disclosure.

31.     Addressing the use of tracking technologies in the regulated entity's risk analysis and risk management processes, as well as implementing other administrative, physical, and technical safeguards in accordance with the Security Rule (*e.g.*, encrypting PHI that is transmitted to the tracking technology vendor; enabling and using appropriate authentication, access, encryption, and audit controls when accessing PHI maintained in the tracking technology vendor's infrastructure) to protect the PHI.

32.     Given that Defendant collected, used, and stored PHI/PII, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information with tracking technology vendors like Google Analytics.

33.     Defendant was obligated to use reasonable technical, administrative, and physical safeguards to protect the PHI/PII it collected or created.  Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to protect the privacy and security of the PHI/PII in its possession.

34.     Plaintiff and the Class Members relied on Defendant's representations and on this sophisticated business entity to keep their PHI/PII confidential, securely maintained, and to make only authorized disclosures of this information.

### *Plaintiff and Class Members Were Harmed By Defendant's Conduct*

35.     The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct.

Because of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

36.    Upon information and belief, once Plaintiff's and Class Members' PII/PHI was disclosed by Defendant to Google, the data was repurposed, sold, shared, and/or disclosed to data brokers and other advertisers.  Such transfer was done without Plaintiff's and Class Members' knowledge or consent and was do for the purpose of making further profits in the advertising ecosystem.

37.    As a result of the Data Breach, Plaintiff's and Class Members' PHI/PII has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss.

38.    Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[5] Data such as name, address, phone number, and credit history has been sold at prices ranging from $40 to $200 per record.[6] Sensitive PII can sell for as much as $363 per record.[7] Further, a stolen medical identity has a $50 value on the black market.[8]

39.    Furthermore, Defendant's poor data privacy practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members, collecting their PHI/PII, and then permitting the unauthorized disclosure of the information, Plaintiff and Class Members were deprived of the benefit of their bargain.

---

[5]    *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[6]*In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/
[7]  *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).
[8]  Study: Few Aware of Medical Identity Theft Risk, Claims Journal (June 14, 2012), https://www.claimsjournal.com/news/national/2012/06/14/208510.htm

40.     Plaintiff and Class Members could not have discovered the Defendant's conduct, because there were no disclosures or other indications that they were interacting with websites employing Google tracking technologies.  Furthermore, the general "cookie consents" that are posted on websites do not constitute "consent" for the disclosure of PHI/PII.

41.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed to unauthorized parties; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

42.     Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## CLASS ALLEGATIONS

43.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

44.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class (the "Class")**: All individuals residing in the United States whose PHI/PII was disclosed to Google between April 2021 and January 2024, as reported by Defendant.

45.     The Class may be referred to as the "Class" or "Class Members."

46.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.    Plaintiff reserves the right to amend the definition of the Class or add a Class or Subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

48.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, there are more than 4.7 million individuals affected by the Data Breach.

49.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, includes the following:

a.    Whether and to what extent Defendant had a duty to protect the PHI/PII of Plaintiff and Class Members from unauthorized disclosure to tracking technology vendors;

b.    Whether Defendant had a duty not to disclose the PHI/PII of Plaintiff and Class Members to unauthorized third parties;

c.    Whether Defendant failed to adequately safeguard the PHI/PII of Plaintiff and Class Members;

d.    Whether Defendant required its third-party vendors to adequately safeguard the PHI/PII of Plaintiff and Class Members;

e.    When Defendant actually learned of the Data Breach;

f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PHI/PII had been compromised;

g. Whether Defendant failed to implement and maintain reasonable privacy/security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

i. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

50. <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

51. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

52. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

53. <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

54.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

55.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

56.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

57.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PHI/PII of Class, Defendant may continue to refuse to provide proper

notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

58.    Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

59.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendant failed to timely notify the Plaintiff and the Class of the Data Breach;

    b.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their PHI/PII;

    c.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer PHI/PII;

    d.  Whether Defendant made false representations about their data privacy practices and commitment to the confidentiality of personal information; and

    e.  Whether adherence to HIPAA rules and/or other data privacy recommendations and best practices would have prevented the Data Breach.

## CAUSES OF ACTION
### (*On behalf of Plaintiff and the Class*)

### COUNT 1: NEGLIGENCE/WANTONNESS

60.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.    While providing a health care service, Defendant collects, creates, or shares information about Plaintiff's and Class Members' health status, provision of health care, or payment for health care that can be used to identify Plaintiff and Class Members.

62.     Plaintiff and Class Members entrusted Defendant with their PHI/PII with the understanding that Defendant would adequately safeguard their information.

63.     Defendant had full knowledge of the types of PHI/PII it collected and the types of harm that Plaintiff and Class Members would suffer if that data was disclosed to an unauthorized third-party.

64.     By collecting, storing, sharing, and using the Plaintiff's and Class Members' PHI/PII, Defendant assumed a duty to use reasonable means to maintain the confidentiality of the personal data it obtained.

65.     Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures; (ii) contractually obligated its vendors to adhere to the requirements of HIPAA; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments of its and its vendors' data processing activities; and (v) provided timely notice to individuals impacted by a data breach event.

66.     Defendant is a covered entity, as defined by HIPAA and, as such is required to comply with the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A, C, and E. Under these rules, Defendant had a duty to implement reasonable and appropriate safeguards for the protected health information under its control.

67.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notification no later than 60 calendar days after the discovery of an unauthorized disclosure of unencrypted protected health information. Defendant had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

68.     Defendant breached its duties under HIPAA by failing to conduct regular privacy assessments and security audits; failing to implement reasonable safeguards; failing to encrypt data; failing to review and modify its privacy and security measures to ensure they remain appropriate to protect the data collected; and/or failing to timely notify Plaintiff and Class Members of the Data Breach.

69.     Defendant also had a duty under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies.

70.     Defendant violated Section 5 of the FTC Act by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff and Class Members information. Defendant further violated Section 5 of the FTC Act, and other state consumer protection statutes by failing to use reasonable measures to protect PII.

71.     Defendant's violations of HIPAA Privacy, Security and/or Breach Notice Rules, Section 5 of the FTC Act, and other state consumer protection statutes, constitutes negligence/wantonness.

72.     Defendant's failure to adhere to its data privacy and security obligations was a reckless disregard for the Plaintiff's and Class Members' privacy rights.  Defendant knew, or should have known, that its failure to take reasonable precautions might result in injury to Plaintiff and Class Members. The negligent and wanton acts or omissions committed by Defendant includes, but is not limited to, the following:

   a.   Failing to encrypt PHI/PII in transit and at rest;

   b.   Failing to adopt, implement, and maintain reasonable administrative, technical, and physical measures to safeguard PHI/PII;

   c.   Allowing unauthorized access to PHI/PII; and

   d.   Failing to detect in a timely manner that PHI/PII had been compromised.

73.    Plaintiff and Class Members were within the class of persons HIPAA and the Federal Trade Commission Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statutes were intended to guard against.

74.    The injuries resulting to Plaintiff and the Class because of Defendant's marketing conduct was reasonably foreseeable.

75.    Plaintiff and the Class were the foreseeable victims of a data breach. Defendant knew or should have known of the inherent risks in collecting and storing PHI/PII and the critical importance of protecting that data.

76.    Plaintiff and the Class had no ability to protect the PHI/PII in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiff and the Class because of the Data Breach.

77.    But for Defendant's breach of duties owed to Plaintiff and the Class, their PHI/PII would not have been compromised. There is a close causal connection between Defendant's failure to protect the confidentiality of Plaintiff and the Class' PHI/PII and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. Defendant's negligence/wantonness proximately caused the Data Breach and other economic and non-economic losses.

78.    As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed to unauthorized parties; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed

up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

79.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

80.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data privacy practices; and (ii) certify their PHI/PII has been deleted by Google or any other tracking technology vendors.

**COUNT 2: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")**

81.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

82.    Defendant used a machine, instrument, contrivance, or other manner willfully and without the consent of Plaintiff and the Class, to read or otherwise learn the contents of a message, report, or communication, while the same was in transit over a wire, line, or cable.  Defendant did such by employing Google Analytics, Google Ads, or other third-parties to track and collect plan members' internet browsing history.

83.    Defendant installed Google tracking technologies on its website, which caused Plaintiff and Class Members' PII/PHI to be intercepted, recorded, stored, and transmitted to Google whenever Plaintiff and the Class interacted with Defendant's websites.

84.    Plaintiff and the Class had a justifiable expectation of privacy in these electronic communications because HIPAA privacy laws prohibit the use of tracking technologies in this manner.

85.    Plaintiff and Class Members were unable to consent to the disclosure because they were never provided with adequate notice.  Defendant's conduct has caused Plaintiff and Class Members harm by disclosing sensitive information.

86.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed to unauthorized parties; and (vii) statutory damages.

### COUNT 3: BREACH OF IMPLIED CONTRACT

87.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

88.     Defendant creates or collects PHI/PII in the ordinary course of providing products or services. In so doing, Plaintiff and Class Members entered implied contracts with Defendant by which Defendant agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the confidential information it collects and stores.

89.     Plaintiff and Class Members would not have entrusted their PHI/PII to Defendant in the absence of an expressed or implied promise to implement reasonable data protection measures.

90.     Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

91.     Defendant breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendant's web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendant collected would be adequately protected and that the Defendant would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

92.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed to unauthorized parties; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

93.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

94.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data privacy practices; and (ii) certify their PHI/PII has been deleted by Google or any other tracking technology vendors.

### COUNT 4: UNJUST ENRICHMENT

95.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     Plaintiff brings this Count in the alternative to the breach of implied contract count above.

97.     By providing their PII, Plaintiff and Class Members conferred a monetary benefit on Defendant. Defendant knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit.

98.    By collecting the PII, Defendant was obligated to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised.

99.    Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiff and Class Members conferred upon Defendant without paying value in return.

100.    As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed to unauthorized parties; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

101.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

102.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data privacy practices; and (ii) certify their PHI/PII has been deleted by Google or any other tracking technology vendors.

**COUNT 5: INVASION OF PRIVACY**

103.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff and Class Members had a legitimate expectation of privacy in their protected health information and other personally identifying information. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

105.    Defendant owed a duty to Plaintiff and Class Members to keep their PHI/PII confidential.

106.    Defendant permitted the public disclosure of Plaintiff's and Class Members' PHI/PII to unauthorized third parties.

107.    The PHI/PII that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of PHI/PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

108.    Despite knowledge of the substantial risk of harm created by these conditions, Defendant intentionally disregarded the risk, and intentionally intercepted and disclosed PHI/PII to Google.

109.    By permitting the unauthorized disclosure, Defendant acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PHI/PII at issue was not newsworthy or of any service to the public interest.

110.     Defendant failed to implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

111.    Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PHI/PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

112.    Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

**COUNT 6: VIOLATION OF THE FEDERAL WIRETAP ACT**

113.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

114.    Under 18 U.S.C. §2511(1)(a), Defendant is prohibited from intentionally intercepting, or procuring any other person to intercept, any wire, oral, or electronic communication.

115.    Furthermore, Defendant is prohibited from intentionally disclosing to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication. 18 U.S.C. §2511(1)(c).

116.    Also prohibited is the intentional use of the contents of any wire, oral, or electronic communication, while knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication. 18 U.S.C. §2511(1)(d).

117.    The term "intercept" means the acquisition of the contents of any wire, electronic, or oral communication using any electronic, mechanical, or other device. 18 U.S.C. §2510(4).

118.    The term "electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system that affects interstate or foreign commerce. 18 U.S.C. §2510(12).

119.    Plaintiff and Class Members bring this count against Defendant because their wire, oral, or electronic communications have been intercepted, disclosed, or intentionally used in violation of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986 by Defendant, Google, or unknown third parties acting on Defendant's behalf. 18 U.S.C. §2520(a).

120. Defendant, Google, or third-party companies acting on Defendant's behalf, intentionally intercepted electronic communications regarding its customers using cookies, pixels, web beacons, tags, scripts, APIs, or similar technologies.

121. Defendant intentionally disclosed the contents of the electronic communications it intercepted from Plaintiff's and Class Member's web browsers and mobile devices to business partners, marketing vendors, and advertisers, while knowing such information was obtained through the interception of a wire, oral, or electronic communication.

122. Defendant intercepted, in real time, the contents of electronic communications transmitted to, within, and from Plaintiff's and Class Members' computers and mobile devices and then diverted those communications to themselves and other third-parties without consent.

123. More specifically, Defendant intentionally used, disclosed, permitted access to, and/or sold the contents of electronic communications it intercepted about its customers (such as web browsing, device location, app/feature use, IP address, device type, MAID, and demographics) to develop targeted advertisements, and business and marketing insights.

124. As stated earlier herein, Defendant disclosed or permitted third-party advertising companies to collect one or more identifiers associated with and connected to individual customers and their mobile devices. Plaintiff and Class Members have a reasonable expectation of privacy in their PHI/PII as such data is required to be kept confidential. More specifically, Plaintiff and Class Members have a reasonable expectation of privacy with respect to the sensitive data that can be collected (or the inferences drawn therefrom) using geolocation data.

125. Plaintiff and Class Members have suffered harm and injury due to the intentional interception, disclosure, and/or use of electronic communications containing their sensitive personal information.

126. As a direct and proximate result of Defendant's unlawful interception, disclosure, and/or use of their protected communications, Plaintiff and Class Members were harmed and are

entitled to appropriate relief such as: (a) equitable or declaratory relief as may be appropriate; (b) reasonable attorney's fee and other litigation costs reasonably incurred; (c) monetary damages, in an amount to be determined at trial, assessed as the greater of (i) the sum of the actual damages suffered by the Plaintiff and Class, plus any profits made by Defendant as a result of its violation; or (ii) statutory damages to each Class Member, of whichever is the greater of $100.00 a day for each day of violation or $10,000.00.

### COUNT 7: VIOLATION OF THE COMPUTER FRAUD & ABUSE ACT
### 18 U.S.C. §§1030, *et seq*.

127.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.    The Computer Fraud & Abuse Act prohibits Defendant from knowingly accessing a computer without authorization, or exceeding authorized access, and obtaining, by means of such access, information from any protected computer.

129.    The term "protected computer" means a computer which is used in or affecting interstate commerce or communication. 18 U.S.C. §1030(e)(2). The term "computer" means an electronic or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any communications facility directly related to or operating in conjunction with such device. 18 U.S.C. §1030(e)(1).

130.    Plaintiff's and Class Members' mobile devices (e.g., smartphones, tablets, smart watches) are computers within the meaning of the statute.[9] As "mobile" devices they are also

---

[9] *See*, National Institute of Standards and Technology (NIST), defining a mobile device as a "portable computing device that: (i) has a small form factor such that it can easily be carried by a single individual; (ii) is designed to operate without a physical connection (e.g., wirelessly transmit or receive information); (iii) possesses local, non-removable data storage; and (iv) is powered-on for extended periods of time with a self-contained power source. Mobile devices may also include voice communication capabilities, on board sensors that allow the device to capture (e.g., photograph, video, record, or determine location) information, and/or built-in features for synchronizing local data with remote locations.

purchased in and/or used for interstate commerce or communication within the meaning of the statute.

131.    Defendant intentionally accessed Plaintiff's and Class Members' protected mobile devices to obtain, by virtue of such access, information pertaining to their use of said devices, such as web browsing history, device location, app/feature use, and IP address. Defendant either did so without consent, or Defendant's conduct exceeded authorized access by obtaining information from the mobile device that Defendant was not expected or entitled to obtain.

132.    Through Defendant's use of cookies, pixels, web beacons, tags, scripts, APIs, or similar technologies embedded in its network, websites and mobile apps, Defendant intentionally accessed the Plaintiff's and Class Members' mobile devices without authorization or in a manner that exceeded the Plaintiff's and Class Members' authorization and obtained information therefrom in violation of the statute.

133.    Plaintiff and Class Members have suffered loss due to Defendant's unauthorized access to the communications containing their confidential and sensitive information and Defendant's sale or disclosure of such information to third parties for targeted advertising.

134.    The Defendant was required by law to obtain prior affirmative consent to disclose the data at issue herein, and by using the data for its own purposes unrelated to the provision of a healthcare service, it either exceeded authorization or never obtained authorization for such use. Through the fraudulent concealment of its business practices, Defendant obtained valuable data from protected computers.

135.    Upon information and belief, the value of the information obtained and/or the loss to Plaintiff and the Class, during any 1-year period, exceeded $5,000.00 in the aggregate.

136.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class Members are entitled to appropriate relief such as: (a) equitable or declaratory relief as may be

appropriate; (b) reasonable attorney's fee and other litigation costs reasonably incurred; (c) statutory

relief, and (d) monetary damages, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class

alleged herein, respectfully requests that the Court enter judgment as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and counsel for Plaintiff as Class Counsel;

B.   For an order declaring the Defendant's conduct violates the statutes and causes of action referenced herein;

C.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.   For actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For prejudgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G.   For injunctive relief as pleaded or as the Court may deem proper; and

H.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I.   Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

claims in this Complaint and of all issues in this action so triable as of right.

Dated: April 29, 2025.                    Respectfully submitted,

*/s/ Eric Poulin*
Eric Poulin (CA Bar No. 298476)
Paul J. Doolittle, Esq.*
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
             cmad@poulinwilley.com

CLASS ACTION COMPLAINT

*Attorneys for Plaintiff and Proposed Class*

*\*Pro Hac Vice forthcoming*

CLASS ACTION COMPLAINT